UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXEI STRELCHENKO,

        Plaintiff,

v.                                                                 Case No. 17-cv-1376-bhl

WALWORTH COUNTY, et al,

        Defendants.

## ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (ECF NO. 14)

### INTRODUCTION

    Plaintiff Alexei Strelchenko claims three Walworth County Sheriff's deputies, Defendants Nicholas Yohanek, Brody Fiedler, and Cody Schwartz, violated his Fourth Amendment rights by falsely arresting him using excessive force. (ECF No. 1.) On February 8, 2019, Defendants moved for summary judgment, insisting they undisputedly had probable cause to arrest Strelchenko and their use of force was objectively reasonable. (ECF No. 15.) Defendants also contend they are entitled to qualified immunity. (*Id.*) The motion is now fully briefed and, for the reasons stated below, is denied.

### FACTUAL BACKGROUND[1]

    On July 10, 2015, Alexei Strelchenko went to the Walworth County Clerk of Court's office to request a copy of some records. (ECF No. 33 ¶1.) In response to Strelchenko's records request, a staff member at the clerk's office, Breanna Blink, told Strelchenko that he could not get a copy of the records because they were only available to the respondent or petitioner of the case. Blink further requested that Strelchenko provide her with his identification and additionally that he submit his request in writing. (*Id.* ¶2.) Strelchenko became irritated, believing Blink was "being

---

[1] These facts are drawn from the proposed statements of undisputed facts (and responses) filed by the parties. (ECF Nos. 16, 30, 31 & 33.) Disputed facts are viewed in the light most favorable to Strelchenko as the non-moving party. *See E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

incompetent" because she was requiring him to provide identification and to make his records request in writing, when neither is a requirement under Wisconsin open records law. (*Id.* ¶3.)

Blink's boss, Sheila Reiff, then came to assist Strelchenko with his request. She confirmed that Strelchenko did not need to provide identification or submit his request for the records in writing. (*Id.* ¶4.) Reiff then instructed a staff member to go get the file for Strelchenko. (*Id.* ¶5.) Blink saw that Strelchenko was upset by the situation and asked Reiff if she should call security. Reiff responded yes. (*Id.* ¶6.) Strelchenko admits he was upset with the clerk's mishandling of his request but insists he neither yelled nor used profanity. (ECF Nos. 30 ¶¶41-42; 31 ¶3.) Blink's attempt to call court security was unsuccessful. (ECF No. 30 ¶48.) Accordingly, she walked from the second floor of the Judicial Center, where she had been speaking with Reiff and Strelchenko, to the court security station on the first floor, where she found a member of security and reported the situation. (*Id.* ¶¶49-50.) Court security then radioed the Walworth County Sheriff's Department for assistance. (*Id.* ¶52.)

Defendant Cody Schwartz was working front desk duty at the Sheriff's Office, across the street from the Judicial Center. (*Id.* ¶¶53-54.) Upon hearing that assistance was needed, he ran over to the Judicial Center and met with Captain Rob Hall and Blink. (*Id.* ¶¶55-56.) After hearing Blink's account of the situation, Hall instructed Schwartz to go upstairs and speak to Strelchenko. (*Id.* ¶61.) Schwartz then proceeded to the second floor where he observed Strelchenko engaged in a disagreement with Reiff. (*Id.* ¶¶ 62-63.) Schwartz asked Strelchenko for identification, and Strelchenko responded by asking if he was under arrest or being detained. (*Id.* ¶¶64-65.) Schwartz then spoke with Reiff separately. (*Id.* ¶66.)

After getting Reiff's report on the situation, Schwartz, and another deputy, Kirk Dodge, spoke with Strelchenko. (ECF No. 33 ¶14.) The precise content of this conversation is disputed, but Strelchenko maintains he repeatedly asked and was repeatedly assured that he was free to leave, was not under arrest, and was not suspected of committing a crime. (ECF No. 33 ¶15.) The parties agree that the deputies then informed Strelchenko that it was 5:00, the clerk's office was closing, and he should leave the building. (ECF No. 30 ¶69.) Strelchenko agreed and walked out of the building, accompanied by the deputies, but without the public records he had come to obtain. (*Id.* ¶70.) In subsequent court proceedings, Dodge confirmed that he advised Strelchenko at this time that he was not being detained or arrested and was free to leave. (ECF No. 33 ¶17.)

While Strelchenko was engaged with Dodge and Schwartz, Defendants Nicholas Yohanek and Brody Fielder arrived at the courthouse. (ECF 30 ¶¶71-72.) Yohanek spoke with Hall who informed him of the situation. (*Id.*) Hall instructed Yohanek and Fielder to try to find a woman who had previously accompanied Strelchenko and had later left the courthouse at Strelchenko's direction. (*Id.* ¶¶73-74.) Yohanek and Fielder found a woman they believed to be Strelchenko's companion in a van with the engine running in the parking lot. (*Id.* ¶75.) As they attempted to speak to the woman, Strelchenko left the courthouse and approached the van. (*Id.* ¶77.)

The specifics of Strelchenko's subsequent interactions with the deputies is also disputed. Yohanek contends he asked Strelchenko for his identification, which Strelchenko refused to provide. (*Id.* ¶79.) Strelchenko maintains he refused to provide his identification because he had been previously told repeatedly that he was not under arrest, not being detained, and was not suspected of committing a crime. (*Id.*) Yohanek further claims he then told Strelchenko that he was under arrest. (*Id.* ¶81.) Strelchenko denies this. He insists that after he refused to provide his identification, Hall stated something to the effect of ""Well, wasn't he being disorderly? Wasn't there a report of himself causing a disturbance up there? Just book him on that already." (ECF No. 33 ¶20.) Strelchenko claims Yohanek then grabbed his hand and twisted it backwards, and then, along with Deputy Schwartz, slammed Strelchenko against the van, without any of the officers telling Strelchenko that he was under arrest. (*Id.* ¶21.) He further asserts that Yohanek and Schwartz slammed him into the van with enough force to make the van shake, even though he had not resisted arrest or otherwise resisted the officers in any way. (*Id.* ¶¶22, 26.)

Strelchenko was then handcuffed, placed in a squad car, and conveyed to the Walworth County Jail. (ECF No. 30 ¶¶89, 92.) After being released from jail, Strelchenko presented to urgent care because he was experiencing an extreme headache, vision so blurry that he could no longer drive, and feeling nauseous and disoriented. (ECF No. 33 ¶28.) Upon evaluation at urgent care, an ambulance was called and Strelchenko was transported to the University of Wisconsin Hospital emergency room because of suspected internal bleeding. (*Id.* ¶29.)

Strelchenko was later criminally charged with Disorderly Conduct and Resisting an Officer as a result of the incident. (ECF No. 30 ¶102.) The District Attorney's office ultimately dismissed the criminal charges and proceeded to prosecute Strelchenko for two ordinance violations. (*Id.* ¶103.) Strelchenko successfully challenged the ordinance violations and a jury acquitted him on both counts. (*Id.* ¶104.)

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

# ANALYSIS

## I. A Reasonable Jury Could Find that Defendants Lacked Probable Cause to Arrest Strelchenko.

Defendants argue they are entitled to summary judgment on Count I of Strelchenko's complaint because they undisputedly had probable cause to arrest him. (ECF 15 at 9.) They insist no reasonable jury could conclude that they lacked probable cause to arrest Strelchenko for disorderly conduct.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Whether officers have probable cause to arrest depends on what they saw and heard, and the facts known to them at the time of arrest. *See Tebbens v. Mushol*, 692 F.3d 807, 816 (7th Cir. 2012); *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). The relevant inquiry is whether at the time of the arrest, the "facts and circumstances within the officer's knowledge ...

are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The court must consider the totality of the circumstances known to the officers at the time and must not focus on only a small part of the overall picture; likewise, officers cannot close their eyes to information that cuts against probable cause. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 718 (7th Cir. 2013) (citing *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010)).

Wisconsin's disorderly conduct statute provides:

> Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

Wis. Stat. §947.01(1).

Defendants insist no jury could find they lacked probable cause to arrest Strelchenko. They insist that Schwartz's conversations with Blink and Reiff about Strelchenko's clear frustration after being (wrongfully) denied documents in response to his open records request, combined with Schwartz's personal observations of Strelchenko, undisputedly gave him probable cause to make a disorderly conduct arrest. (ECF No. 15 at 12-13.)

Defendants' argument ignores several disputed facts and other circumstances that cut against a finding of probable cause for an arrest. Strelchenko's interactions with Blink, Reiff, and Schwartz are disputed. Strelchenko admits being frustrated with the clerk's office employee's refusal to comply with the open records law but flatly denies yelling, using profane language, or engaging in the types of conduct identified in the disorderly conduct statute. He points to testimony from his earlier ordinance violation trial confirming that he was not yelling or using profanity. (ECF Nos. 29 at 3; 18-2 at 115-17.)

Defendants also fail to account for other circumstances that preceded Strelchenko's arrest. After discussions outside the clerk's office, Strelchenko agreed to leave peacefully (even without his properly requested public records). (ECF No. 30 ¶69.) At that time, Dodge repeatedly advised Strelchenko that he was not being detained or arrested and was free to leave. (ECF No. 33 ¶17.) Schwartz and Dodge appear to have been content to have Strelchenko leave the building and a jury could infer that they did not believe there was cause for an arrest. It was only after Strelchenko had voluntarily left the courthouse that Yohanek re-escalated the situation and Hall directed the

other officers to arrest Strelcheko. Based on this factual sequence, a reasonable jury could conclude that the officers did not have probable cause to make the arrest.

In reply, Defendants invoke the collective knowledge doctrine, insisting that Yohanek's decision to arrest Strelchenko (after the other officers had apparently decided otherwise) can be justified based on information unknown to Yohanek but known to those other officers. The collective knowledge doctrine allows police officers to make an arrest not just on their own first-hand knowledge, but with reasonable reliance on facts derived from other officers. *See United States v. Parra*, 402 F.3d 752, 764-65 (7th Cir. 2005) (citing *United States v. Hensley*, 469 U.S. 221 (1985)). This doctrine does not help Defendants defeat Strelchenko's claims at summary judgment. Probable cause for an arrest is based on the totality of the circumstances and summary judgment is decided based on the record as a whole. Defendants are not entitled to selectively impute only some of the factual narrative, while ignoring disputed facts in the record. The officers' collective knowledge thus includes Dodge's assertions to Strelchenko that he was not being arrested, along with the other disputed facts outlined previously. Whether the factual record as a whole, known to the officers collectively, was sufficient to satisfy probable cause is a jury issue.

## II. A Reasonable Jury Could Find that Defendants Used Excessive Force Against Strelchenko.

Defendants also contend they are entitled to summary judgment on Strelchenko's excessive force claim. They argue that their use of force in affecting his arrest was objectively reasonable under the circumstances. (ECF No. 15 at 15.) They point to evidence that Strelchenko "continued to resist" and "escalated his noncompliance," which resulted in the Defendants having to use the van to stabilize him so they could handcuff him. (*Id.* at 16.)

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). In analyzing an excessive force claim, the Court applies an objective reasonableness test and considers the reasonableness of the force based on the events confronting the officer at the time and not on his subjective beliefs or motivations. *See Horton v. Pobjecky*, 883 F.3d 941, 949-50 (7th Cir. 2018) (citing *Graham*, 490 U.S. at 396-97). This test carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 949 (quoting *Graham*,

490 U.S. at 396). This balance "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Horton*, 883 F.3d at 949 (quoting *Graham*, 490 U.S. at 396).

Defendants insist that their use of force, in twisting Strelchenko's arm and throwing him against the van in order to handcuff him were reasonable under the circumstances. They argue that Strelchenko refused to stop resisting, necessitating their use of the van to "stabilize" Strelchenko so they could handcuff him. (ECF No. 15 at 16.) But the facts related to Defendants' use of force against Strelchenko are disputed.

According to Strelchenko, Yohanek decided to arrest him after he refused to provide identification, having been previously assured that he was not under arrest, not being detained, and was not suspected of committing a crime. (ECF Nos. 29 at 2, 4-5; 31 ¶¶20, 22, 24.) While Yohanek claims he told Strelchenko that he was under arrest, (ECF Nos. 16 ¶81; 21 ¶10), Strelchenko denies this and insists that Hall simply instructed the other deputies to arrest him for conduct that other officers had (apparently) deemed insufficient for an arrest. (ECF No. 33 ¶20.) At that point, Yohanek grabbed Strelchenko's hand and twisted it backwards. Then, Yohanek and Deputy Schwartz slammed Strelchenko against the van with enough force to make the van shake, even though he had not resisted arrest or otherwise resisted the officers in any way. (*Id.* ¶¶22, 26.) Strelchenko was then handcuffed, placed in a squad car, and conveyed to the Walworth County Jail. (ECF Nos. 30 ¶¶89, 92.) After being released from jail, Strelchenko went to urgent care, and after exhibiting signs of a potential concussion, was transported to the University of Wisconsin Hospital emergency room by ambulance. (ECF No. 33 ¶¶28-29.)

Given these disputed facts and circumstances, whether the force used to effectuate Strelchenko's arrest was reasonable cannot be decided on summary judgment. Defendants' motion must be denied.[2]

---

[2] In support of their motion, Defendants have submitted a DVD containing video of the parking lot during the arrest. (ECF No. 25.) The video does not contain sufficient detail to definitively resolve the disputed issues concerning the arrest. Accordingly, the Court cannot conclude, based on the video, that a jury would necessarily reject Strelchenko's version of events.

**III. Defendants Are Not Entitled to Qualified Immunity.**

Defendants also contend they are entitled to summary judgment on qualified immunity grounds. (ECF No. 15 at 17.) The Seventh Circuit has explained that "Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). The qualified immunity analysis involves (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Williams*, 733 F.3d at 758.

At the time of Strelchenko's arrest, it was clearly established that an officer could not arrest an individual without probable cause and could not use excessive force against that individual during an arrest. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). It was also clearly established that using a significant level of force on a non-resisting or passively resisting individual constitutes excessive force. *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995); *see also Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (denying qualified immunity to officers who slammed a non-resisting detainee's head into a concrete bunk and used a taser while he was handcuffed); *Sallenger v. Oakes*, 473 F.3d 731, 741-42 (7th Cir. 2007) (denying qualified immunity to officers who improperly hobbled and repeatedly struck a non-resisting suspect).

Because the material facts concerning the officers' beliefs and Strelchenko's conduct during the arrest are disputed, summary judgment is inappropriate. Where the facts are in "hot dispute," police officers cannot seek "refuge behind a claim of qualified immunity.'" *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (finding it improper to determine qualified immunity when there was a material dispute as to whether plaintiff was resisting arrest when force was used upon him) (quoting *Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998)).

## CONCLUSION

Because the undisputed facts do not show that Defendants are entitled to judgment as a matter of law, their motion for summary judgment (ECF No. 14) is DENIED.

SO ORDERED this 11th day of August, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge